|   |   |   |
|---|---|---|
| | **UNITED STATES DISTRICT COURT** | |
| | **EASTERN DISTRICT OF CALIFORNIA** | |
| | | |
| **MASTRONARDI INTERNATIONAL LIMITED,** | | **CASE NO. 1:18-cv-00737-AWI-JLT** |
| Plaintiff, | | **ORDER DENYING PLAINTIFF'S MOTION FOR AN ANTI-ARBITRATION INJUNCTION** |
| v. | | |
| **SUNSELECT PRODUCE (CALIFORNIA), INC.,** | | (Doc. No. 40) |
| Defendant. | | |

## I. Introduction

This is a lawsuit about a business dispute between a tomato grower and a tomato merchant. The grower is SunSelect Produce (California), Inc. ("SunSelect") and the merchant is Mastronardi International Limited ("Mastronardi"). SunSelect and Mastronardi entered into a written agreement wherein SunSelect would grow tomatoes exclusively for Mastronardi and Mastronardi would purchase the tomatoes from SunSelect. After the agreement was entered into, the parties quarreled about the other's performance or lack thereof under the agreement. Mastronardi then filed this lawsuit, alleging and pleading that SunSelect violated the Perishable Agricultural Commodities Act ("PACA"). PACA is a federal law that regulates the interstate perishable agricultural commodities industry, see 7 U.S.C. §§ 499a-499t, and PACA expressly provides for certain causes of action, some of which Mastronardi pleaded against SunSelect. Shortly after Mastronardi filed this lawsuit, SunSelect initiated an arbitration proceeding in Canada against Mastronardi. In the arbitration, SunSelect claimed that Mastronardi breached the agreement by, first, failing to pay SunSelect for delivered tomatoes and, second, publicly disclosing information in the agreement that the parties were contractually required to keep confidential. SunSelect also claimed in the arbitration that Mastronardi made material misrepresentations to SunSelect while the two parties were negotiating and entering into the agreement. Mastronardi has now moved the

Court to enjoin SunSelect from proceeding with the arbitration, which is scheduled to hold the evidentiary hearing on February 10, 2010. For the reasons discussed infra, the Court will deny Mastronardi's motion.

## II. Background

SunSelect and Mastronardi entered into a written agreement in January 2017. The agreement provided that SunSelect would grow, cultivate, harvest, and produce a particular variety of tomato and then sell those tomatoes exclusively to Mastronardi. In return, Mastronardi would purchase the tomatoes from SunSelect.

The agreement contains a provision, "Paragraph 22," that identifies the procedures the parties will follow if they have a dispute arising from the agreement:

> 22. Disputes. In the event of any disputes arising between the Parties with respect to the interpretation of this Agreement or the performance or obligations hereunder by any party, any party may notify the other party of such and each of the parties will then refer the dispute to its respective chief executive officer, and the chief executive officers will negotiate in good faith to resolve the dispute promptly. If the chief executive officers are unable to resolve the dispute, <u>the dispute shall be settled under procedures set out in PACA, if applicable, and if not applicable, the parties shall refer the dispute to a single arbitrator appointed under the provisions of the Commercial Arbitration Act (British Columbia), whose determination will be final and binding on the Parties</u>.

Doc. No. 1-1 at ¶ 22 (emphasis added). The Court will occasionally refer to this provision as the "dispute-resolution clause."

The agreement also contains a confidentiality provision, "Paragraph 21," that requires the parties to "treat as confidential any and all information learned by the other concerning the business or affairs of the other that is not generally known to the public . . . ." Id. at ¶ 21.

On May 30, 2018, Mastronardi filed this lawsuit against SunSelect. Some of Mastronardi's allegations against SunSelect are as follows. First, SunSelect "breached the Agreement by failing or refusing to deliver the [tomatoes] to [Mastronardi] during the Harvest Period or otherwise." Doc. No. 1 at ¶ 33. Second, SunSelect grew and then sold the tomatoes to persons or entities other than Mastronardi, which was a violation of the agreement. Id. at ¶ 34. Third, although the agreement required SunSelect to dedicate eight acres for specific purposes related to growing the tomatoes for Mastronardi, SunSelect utilized the eight acres for purposes

other than those allowed by the agreement. Id. at ¶ 62. Fourth, SunSelect "failed to demonstrate to or otherwise provide [Mastronardi] with any meaningful explanation or verifiable or other just cause for its failure or refusal to deliver any of the [tomatoes] [Mastronardi] contracted to purchase from [SunSelect]." Id. at ¶ 44. Fifth, SunSelect "failed or refused to deliver any of the [tomatoes] [Mastronardi] contracted to purchase from [SunSelect]." Id. at ¶ 42. Sixth, SunSelect intentionally made false and misleading statements to Mastronardi, and Mastronardi relied on those false and misleading statements when it entered into the agreement and fulfilled its obligations to SunSelect under the agreement. Id. at ¶ 47-61.

Based on the foregoing allegations, Mastronardi pleaded three claims for relief against SunSelect. All three claims derive from PACA. The three claims are: (1) "Unfair Trade Practice – Failure to Deliver Produce" pursuant to § 499b(2) of PACA; (2) "Unfair Trade Practice – Make False or Misleading Statements" pursuant to § 499b(4) of PACA; and (3) "Unfair Trade Practice – Failure to Perform Specification or Duty" pursuant to § 499b(4) of PACA.

On June 21, 2018, which was approximately three weeks after Mastronardi filed this lawsuit, SunSelect initiated an arbitration proceeding against Mastronardi in the British Columbia International Commercial Arbitration Centre, located in British Columbia, Canada. In the arbitration, SunSelect claimed that Mastronardi breached the agreement by, first, failing to pay for delivered tomatoes and, second, publicly disclosing information in the agreement that was contractually required to remain confidential. SunSelect also claimed that Mastronardi made material misrepresentations to SunSelect while the two parties were negotiating and entering into the agreement. Mastronardi and SunSelect have been participating in the arbitration, such as through discovery. The arbitration evidentiary hearing is scheduled to begin on February 10, 2020.

On November 2, 2018, SunSelect filed a counterclaim in this lawsuit against Mastronardi. Some of SunSelect's allegations in the counterclaim are as follows. First, SunSelect delivered tomatoes to Mastronardi pursuant to the agreement, but Mastronardi failed to pay for the tomatoes. Second, the Agreement contained sensitive business information about SunSelect's operations, such as tomato pricing information and growing information, and Mastronardi was required by the

agreement to keep that business information confidential, but Mastronardi publicly disclosed the information. Third, Mastronardi fraudulently or negligently misrepresented to SunSelect certain information that was material to the agreement, and SunSelect relied on those misrepresentations when it entered into the agreement with Mastronardi.

Based on the foregoing allegations, SunSelect pleaded the following counterclaims against Mastronardi, some of which derive from PACA: (1) declaratory relief validating a trust claim pursuant to § 499e(c) of PACA; (2) enforcement of payment from the PACA trust assets pursuant to § 499e(c) of PACA; (3) trade secret misappropriation and disclosure under the federal Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836(b), 1837; (4) trade secret misappropriation and disclosure under California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.1 et seq.; (5) failure to pay promptly pursuant to § 499b(4) of PACA; (6) false and misleading statements pursuant to PACA; (7) an award of attorney's fees under DTSA, CUTSA, the PACA trust provisions, and the agreement; and (8) declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

On December 16, 2019, which was approximately eighteen months after SunSelect initiated the arbitration, Mastronardi filed its motion to enjoin SunSelect from proceeding with the arbitration. See Doc. No. 40.

## II. Mastronardi's Motion for Anti-Arbitration Injunction

**A.     Mastronardi's arguments.**

Under the Ninth Circuit's standard for anti-suit injunctions, the Court should enjoin SunSelect from proceeding with the Canadian arbitration for the following reasons. First, the arbitration and this lawsuit involve the same parties, Mastronardi and SunSelect. Second, the claims and issues in the arbitration are functionally the same as the claims and issues in this lawsuit. Third, it is inefficient and duplicative for this lawsuit and the arbitration to proceed simultaneously on dual tracks, and this is because the parties can resolve the claims and issues in the arbitration by adjudicating the claims and issues in this lawsuit. Fourth, if the arbitration is permitted to proceed to a decision, then the arbitration decision may be inconsistent with the forthcoming verdict and judgment in this lawsuit. Additionally, the arbitration's findings of fact

4

will possibly collaterally estop the adjudication of material facts in this lawsuit. Fifth, SunSelect initiated the arbitration three weeks after this lawsuit was filed, and SunSelect did so "to harass Mastronardi and avoid this litigation." Doc. No. 40 at 10. Consequently, if SunSelect is permitted to proceed with the arbitration, then SunSelect will be rewarded for forum-shopping and being vexatious. Sixth, enjoining SunSelect from participating in the arbitration will not intolerably impact comity, and this is because the arbitration does not concern international issues or foreign governments. At most, the arbitration concerns a contractual dispute between two commercial parties.

**B.     SunSelect's arguments.**

An anti-arbitration injunction is not warranted against SunSelect for the following reasons. First, the issues in the arbitration are not the same as the issues in this lawsuit. Whereas the issues in this lawsuit arise from alleged violations of PACA, DTSA, and CUTSA, the issues in the arbitration arise from alleged breaches of the parties' agreement. Second, the arbitration is not vexatious. This is because the arbitration is mandated by the plain terms of the parties' agreement, which states that disputes arising from the agreement are to be resolved through arbitration if PACA does not apply to the dispute. Third, to the extent that a forthcoming arbitration decision is inconsistent with a decision in this lawsuit or collaterally estops an issue in this lawsuit, the parties contractually agreed to that possibility. Fourth, enjoining SunSelect from participating in the arbitration would intolerably impact comity, and this is because the Court's injunction would convey a message to the Canadian arbitration tribunal that this Court has little confidence in the Canadian arbitration tribunal. Fifth, it would be inequitable to enjoin SunSelect's participation in the arbitration, and this is because Mastronardi delayed seeking the injunction for eighteen months. Mastronardi's eighteen-month delay until the eve of the arbitration evidentiary hearing makes two points clear: (1) Mastronardi is equitably estopped from now seeking to enjoin SunSelect; and (2) Mastronardi is now seeking the injunction only because Mastronardi is both displeased with prior arbitration rulings (e.g., choice-of-law and discovery rulings) and dreading the forthcoming arbitration decision.

**C.    Legal standard for anti-suit injunction.**[1]

"A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be used sparingly." E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 989 (9th Cir. 2006) (citations omitted). "The injunction operates in personam: the American court enjoins the claimant, not the foreign court." Id.

"The suitability of an anti-suit injunction involves different considerations from the suitability of other preliminary injunctions. An anti-suit injunction, by its nature, will involve detailed analysis of international comity." Id. at 990. Consequently, the standard for issuing anti-suit injunctions is different from the standard for issuing traditional preliminary injunctions. Id. at 990-91.

The standard for issuing an anti-suit injunction consists of a three-part inquiry. "First, we determine whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined. Second, we determine whether at least one of the so-called 'Unterweser factor'" applies. Finally, we assess whether the injunction's impact on comity is tolerable." Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 881 (9th Cir. 2012) (citations omitted).

**D.    Analysis.**

   **1.    First inquiry: whether the parties and issues are the same.**

The first inquiry is to determine "whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined." E. & J. Gallo Winery, 446 F.3d at 991 (citations omitted). If the parties or issues are not the same, then an anti-suit injunction is not warranted.

Where the parties have agreed to a forum-selection clause, the following principle guides the determination of whether the issues are the same and whether the first action is dispositive of the action to be enjoined is guided by the following principle: "[c]ourts should give effect to freely

---

[1] The term "anti-suit injunction" is commonly used by the courts. So in this order, the Court will occasionally use the term even though the Court is technically dealing with an "anti-arbitration injunction." Perhaps the broadest technically-sound term would be "anti-foreign-action injunction," but that is a mouthful.

6

made contractual agreements." Microsoft Corp., 696 F.3d at 885. This principle guides the determination because "whenever a party agrees to a forum-selection clause, [the party] relinquishes any benefits that it might receive from statutory rights or favorable canons of contractual interpretation only available in other forums." Id. at 884. "That is the party's choice, and there are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect." Id. at 884-85 (citations omitted).

Consequently, issues are "meaningfully the same" if "the domestic action is capable of disposing of all the issues in the foreign action and all the issues in the foreign action fall under the forum selection clause." Applied Med. Distribution Corp. v. Surgical Co. BV, 587 F.3d 909, 915 (9th Cir. 2009) (quotations omitted) (emphasis added). This means that in asking whether the issues are functionally the same, "the fundamental question" is "whether a requested anti-suit injunction should issue under a contractual forum selection agreement." Id. "Therefore, the crux of the functional inquiry in the first step of the analysis is to determine whether the issues are the same in the sense that all the issues in the foreign action fall under the forum selection clause and can be resolved in the local action." Id. (emphasis added). See also id. at 916 ("We hold that the present action is dispositive of the Belgian action because all of the claims in the Belgian action arise out of the Agreement, are subject to the forum selection clause, and therefore must be disposed of in the California forum if at all. Therefore, the issues are functionally the same.") (quotations and original brackets omitted) (emphasis added).

The question of whether the issues are functionally the same "is intrinsically bound up with" a "tentative assessment of the merits" of the claims in both actions. Microsoft Corp., 696 F.3d at 884. In other words, the court is required to tentatively assess the merits of the claims in both actions in order to determine whether the issues in both actions are functionally the same. But to be clear, this tentative assessment is not an assessment of "the likelihood of success on the merits," which is the assessment required for a traditional preliminary injunction. Id. at 883-84.

Here the parties in this lawsuit and the arbitration are the same, and the parties do not dispute this fact. As for whether the issues in both actions are functionally the same, the Court

must first address the parties' dual-prong dispute-resolution clause. This is because the Court should give full effect to that clause. See id. at 885. The dispute-resolution clause states:

> In the event of any disputes arising between the Parties with respect to the interpretation of this Agreement or the performance or obligations hereunder by any party . . . . <u>the dispute shall be settled under procedures set out in PACA, if applicable, and if not applicable, the parties shall refer the dispute to a single arbitrator appointed under the provisions of the Commercial Arbitration Act (British Columbia), whose determination will be final and binding on the Parties</u>.

Doc. No. 1-1 at ¶ 22 (emphasis added). The Court gives full effect to the dispute-resolution clause in the following way. The clause consists of dual prongs: (1) a PACA-procedures prong and (2) an arbitration-prong. As the Court previously stated in this lawsuit about the dual prongs,

> [a]ccording to the text of the arbitration agreement, SunSelect and Mastronardi intended to limit the scope of disputes that are subject to arbitration. This intent is evidenced through the use the phrases "if applicable" and "if not applicable" when referring to PACA. When these phrases are given their effect, as they should be, the arbitration agreement clearly intends for certain disputes to be resolved not by arbitration but through the procedures set out in PACA if PACA is applicable.

<u>Mastronardi Int'l Ltd. v. Sunselect Produce (California), Inc.</u>, 2018 WL 5262599, at *5 (E.D. Cal. Oct. 19, 2018) (citations omitted). The inverse of the Court's previous statement is equally true: if PACA's procedures are inapplicable to the parties' dispute, then the arbitration agreement clearly intends for the dispute to be resolved by arbitration.

SunSelect's claims in the arbitration proceeding, unlike Mastronardi's claims in this lawsuit, are not PACA claims. They are, instead, claims for breach of contract and fraudulent and negligent misrepresentation. Consequently, PACA's dispute-resolution procedures — which include filing a federal lawsuit, <u>see</u> 7 U.S.C. § 499e(b), as illustrated by this lawsuit for Mastronardi's PACA claims — are inapplicable to SunSelect's arbitration claims. This in turn means under the dispute-resolution clause that SunSelect's arbitration claims are properly in arbitration, not in this lawsuit.

With that groundwork in place, the Court next focuses on the Ninth Circuit's aforementioned test for "functional similarity" in cases where the parties contractually agreed to a dispute-resolution procedure and forum. The test asks two questions: first, whether "all the issues in the foreign action fall under the forum selection clause"; and, second, whether "all the issues in

the foreign action . . . can be resolved in the local action." Applied Med. Distribution Corp., 587 F.3d at 915. The first question, which Mastronardi totally failed to recognize and address, must be carefully applied to this lawsuit, and that is because the parties' dispute-resolution clause is not a standard one-size-fits-all clause like those in Applied Med. Distribution Corp. and E. & J. Gallo Winery. See Applied Med. Distribution Corp., 587 F.3d at 911 (forum-selection clause stating "[t]he federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement") (emphasis added); E. & J. Gallo Winery, 446 F.3d at 987 (forum-selection clause stating "any cause of action arising between the parties, whether under this agreement or otherwise, shall be brought only in a court having jurisdiction and venue at the home office of Winery") (emphasis added). Instead, the parties' unique dispute-resolution clause provides for at least two mutually exclusive dispute-resolution procedures: (1) a PACA lawsuit[2] or (2) a non-PACA arbitration. Mastronardi's PACA claims in this lawsuit fall under the PACA-procedures prong, not the arbitration prong, as the Court previously ruled in this lawsuit. See Mastronardi Int'l Ltd., 2018 WL 5262599 (E.D. Cal. Oct. 19, 2018).

Therefore, here the first question asks whether all issues in the Canadian arbitration fall under the PACA-procedures prong, which is the basis of this lawsuit. The answer is "no," and this is because PACA's procedures are not applicable to the issues in the arbitration proceeding. Again, the issues and claims in the arbitration are not (and contractually cannot be) based on PACA. Consequently, the issues in this lawsuit and the arbitration are not "meaningfully the same" for purposes of an anti-suit injunction. See Applied Med. Distribution Corp., 587 F.3d at 915 (quotations omitted).

**2.      Second inquiry: whether at least one of the Unterweser factors applies.**

The second inquiry is whether at least one of the Unterweser factors applies. If none of the Unterweser factors applies, then an anti-suit injunction is not warranted. "The Unterweser factors are a disjunctive list of considerations that may justify a foreign anti-suit injunction," first articulated by the Fifth Circuit in In re Unterweser Reederei GMBH, 428 F.2d 888, 896 (5th Cir.

---

[2] In addition to filing a PACA lawsuit, PACA's remedial procedures also include filing a complaint with the United States Secretary of Agriculture. See 7 U.S.C. § 499e(b).

9

1970), and adopted by the Ninth Circuit "as instructive" in <u>Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League</u>, 652 F.2d 852, 855 (9th Cir. 1981). <u>Microsoft Corp.</u>, 696 F.3d at 881. The full list of <u>Unterweser</u> factors is as follows:

> [W]hether the foreign litigation would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations.

<u>Id.</u> at 882 (citations omitted). "[A]ny of the <u>Unterweser</u> factors may justify a foreign anti-suit injunction[.]" <u>Id.</u> at 882 n.9 (citations omitted).

### ***i.    Policies of the forum issuing the injunction.***

"[F]oreign litigation may be enjoined when it would . . . frustrate a policy of the forum issuing the injunction." <u>E. & J. Gallo Winery</u>, 446 F.3d at 991 (citations omitted). In California and America, there is a policy of upholding forum-selection clauses in freely negotiated commercial contracts. <u>Applied Med. Distribution Corp.</u>, 587 F.3d at 914; <u>E. & J. Gallo Winery</u>, 446 F.3d at 992 (citations omitted) (explaining the policy reasons for favoring and upholding forum-selection clauses). "[T]he Supreme Court has established a strong policy in favor of the enforcement of forum selection clauses." <u>Id.</u> (citing <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585 (1991)). This means that with respect to "freely negotiated private international agreement[s], unaffected by fraud, undue influence, or overweening bargaining power," forum-selection clauses should generally "control absent a strong showing that it should be set aside." <u>E. & J. Gallo Winery</u>, 446 F.3d at 992 (citations omitted).

There is also a policy in America of upholding arbitration clauses in freely negotiated commercial contracts. "The Supreme Court has observed that arbitration clauses, like forum selection and choice of law clauses, can specify 'in advance the forum in which disputes shall be litigated and the law to be applied' and that this function is 'indispensable' to the 'achievement of the orderliness and predictability essential to any business transaction.'" <u>Id.</u> at 993 (quoting <u>Scherk v. Alberto–Culver Co.</u>, 417 U.S. 506, 516 (1974)).

///

Here the parties contractually agreed to the Canadian arbitration proceeding. Consequently, the arbitration does not frustrate the policies of upholding forum-selection clauses and arbitration clauses. This Unterweser factor does not apply.

### ii.  *Vexatious and oppressive.*

Foreign litigation may be enjoined when it is vexatious and oppressive. Mastronardi contends that the arbitration is vexatious and oppressive because, first, the arbitration contravenes the parties' dispute-resolution clause and, second, SunSelect initiated the arbitration proceeding to harass Mastronardi. The Court is not persuaded.

As discussed supra, the parties' dispute-resolution clause provides for non-PACA disputes to be referred to arbitration. Therefore, because the arbitration was contractually agreed to by the parties, the arbitration is neither vexatious nor oppressive. This conclusion is unmoved by the fact that SunSelect initiated the arbitration three weeks after this lawsuit was filed or the fact that SunSelect also filed a complaint against Mastronardi with the United States Department of Agriculture. Further, this conclusion is strengthened by the fact that Mastronardi waited eighteen months to move for the anti-arbitration injunction.

### iii.  *Other equitable considerations: substantial inconvenience, unnecessary expense, and duplication of efforts.*

Foreign litigation may be enjoined when it causes substantial inconvenience, unnecessary expense, and duplication of efforts. See Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League, 652 F.2d 852, 855-56 (9th Cir. 1981). Mastronardi contends that all those effects will be caused by the arbitration. Specifically, according to Mastronardi, the arbitration will (1) require the same witnesses to travel between and testify in this California lawsuit and the arbitration in British Columbia; (2) require the parties to file duplicative motions in both this lawsuit and the arbitration; and (3) delay this lawsuit. The Court is not persuaded.

First, the parties contractually agreed to the dual-prong dispute-resolution procedure. The consequences of that procedure may now feel burdensome to Mastronardi, but Mastronardi implicitly agreed to those consequences when it agreed to the dual-prong procedure. Second, the

fact that an unidentified number[3] of witnesses may be required to appear in both this lawsuit and the Canadian arbitration is insufficient to show substantial inconvenience and unnecessary expense. The following two points make this clear: (1) Mastronardi agreed to arbitrate in Canada; and (2) the general rule, "which should ordinarily be respected," is that parallel proceedings should be allowed to proceed simultaneously. Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 926-27 (D.C. Cir. 1984) ("[T]he fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.") (cited with approval and recognized by the Ninth Circuit as the "seminal case on anti-suit injunctions" in Microsoft Corp., 696 F.3d at 887). In other words, witnesses being required to appear in parallel actions is not inconsistent with the general rule, even if those actions are in different locations. Likewise, parties being required to present duplicative arguments in parallel actions is not inconsistent with the general rule. Third, Mastronardi provided no explanation or evidence showing that this lawsuit will be significantly delayed by the arbitration.

### *iv.* *Other equitable considerations: inconsistent rulings or race to judgment.*

Foreign litigation may be enjoined when it threatens inconsistent rulings or a race to judgment. Seattle Totems Hockey Club, Inc., 652 F.2d at 856. Mastronardi contends that "[b]y placing the same breach of agreement issues before two different tribunals, SunSelect can test its arguments at each tribunal and then opportunistically race to judgment in whichever jurisdiction it believes to be most sympathetic to its cause." Doc. No. 40. The Court is not persuaded.

First, the parties contractually agreed to the dual-prong dispute-resolution procedure. The consequences of that procedure may (or may not) result in collateral estoppel or res judicata, but Mastronardi implicitly agreed to those consequences when it agreed to the dual-prong procedure. Second, Mastronardi failed to explain with any precision how collateral estoppel or res judicata

---

[3] As with so many of Mastronardi's assertions, Mastronardi failed to provide the Court with any specificity or supporting evidence for the assertion that "[t]he parties would be forced to shuttle witnesses back and forth thousands of miles for duplicative testimony." Doc. No. 40. Which witnesses? How many witnesses? Mastronardi failed to adequately address these relevant questions.

12

can or will apply. At most, Mastronardi bluntly asserts, "[T]his Court and a foreign court could issue inconsistent decisions on the same breach of Agreement questions." Id. Which questions? Mastronardi failed to adequately address this relevant issue. Third, Mastronardi appears to misunderstand its own claims in this lawsuit. Mastronardi's claims in this lawsuit are not common law breach of contract claims. Rather, they are for violations of § 499(b) of PACA: namely, first, "Unfair Trade Practice – Failure to Deliver Produce" pursuant to § 499b(2); second, "Unfair Trade Practice – Make False or Misleading Statements" pursuant to § 499b(4); and, third, "Unfair Trade Practice – Failure to Perform Specification or Duty" pursuant to § 499b(4). Mastronardi totally failed to identify and discuss the elements of its PACA claims, which in turn led Mastronardi to totally fail to discuss which specific PACA elements, if any, would be adjudicated in the arbitration proceeding.[4] See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curium) (recognizing that it is the movant's burden to clearly show that injunctive relief is warranted).

### 3. Third inquiry: whether the impact on comity would be intolerable.

The third inquiry is whether the anti-suit injunction's impact on comity would be intolerable. If the anti-suit injunction's impact on comity would be intolerable, then the injunction is not warranted. E. & J. Gallo Winery, 446 F.3d at 994. The court does not need to "calculate the precise quantum of the injunction's interference with comity, but only . . . estimate whether any such interference is so great as to be intolerable." Microsoft Corp., 696 F.3d at 886.

"Comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws. It is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." E. & J. Gallo Winery, 446 F.3d at 994 (citations omitted). "[C]omity, as many courts have recognized, is a complex and elusive concept." Microsoft Corp., 696 F.3d at 886 (citations omitted).

---

[4] It is striking that in both Mastronardi's motion brief and reply brief, Mastronardi never once cited, quoted, or discussed the actual language of § 499b of PACA, which is the statutory basis of Mastronardi's PACA claims (and some of SunSelect's PACA counterclaims) in this lawsuit. Not surprisingly, therefore, the Court is not persuaded when Mastronardi simply tells the Court that "each and every of SunSelect's claims in arbitration will be resolved by a decision in this District Court action." Doc. No. 48.

13

While comity is a complex and elusive concept, the circuit courts have provided "some objective guidance as to factors that may inform our comity inquiry in the anti-suit injunction context." Id. at 887. For instance, the Ninth Circuit has said that "norms of comity" are generally not breached when an anti-suit injunction is required to uphold a forum-selection clause in a purely contractual dispute involving only private parties, not government parties. E. & J. Gallo Winery, 446 F.3d at 994. See Applied Med. Distribution Corp., 587 F.3d at 920. Stated the Ninth Circuit,

> [C]omity is less likely to be threatened in the context of a private contractual dispute than in a dispute implicating public international law or government litigants. At one pole, where two parties have made a prior contractual commitment to litigate disputes in a particular forum, upholding that commitment by enjoining litigation in some other forum is unlikely to implicate comity concerns at all. At the other pole, if (hypothetically speaking) the State Department represented to the court that "the issuance of an injunction really would throw a monkey wrench, however small, into the foreign relations of the United States," Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 10 F.3d 425, 431 (7th Cir. 1993) (Posner, J.), then comity would presumably weigh quite heavily against an anti-suit injunction. Between these two poles, courts must in their discretion evaluate whether and to what extent international comity would be impinged upon by an anti-suit injunction under the particular circumstances.

Microsoft Corp., 696 F.3d at 887 (some citations omitted).

Here an anti-arbitration injunction's impact on comity would not be intolerable. This is largely because the parties' arbitration forum — namely, the British Columbia International Commercial Arbitration Centre — is not a legislative, executive, or judicial body of Canada. Rather, it appears to be a private, non-profit organization. Therefore, absent the applicability of some other consideration,[5] the Court concludes that comity would not be intolerably impacted if SunSelect were enjoined from participating in the private arbitration proceeding.

**E.     Conclusion.**

"Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. If [the parties] are dissatisfied, the time to say so is at the bargaining table." Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC, 4 N.E.3d 336, 343 (N.Y.

---

[5] For example, if an anti-arbitration injunction were at odds with The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention"), 21 U.S.T. 2517 (1958), 9 U.S.C. § 202, which Canada appears to be a signatory to, then perhaps a comity consideration would arise. But neither party raised such a consideration.

14

2013).  In the face of this rule, Mastronardi failed to clearly show that an anti-arbitration injunction is warranted.  Consequently, Mastronardi's motion for an anti-arbitration injunction will be denied.

**F.     Admonishment.**

In Mastronardi's motion brief, Mastronardi's attorneys repeatedly failed to capitalize the proper noun, "Ninth Circuit."  <u>See, e.g.</u>, Doc. No. 40 at 3 (". . . adopted by the ninth circuit . . . ."); <u>id.</u> at 4 (". . . the requirements of the first prong of the ninth circuit test for issuance of an anti-suit injunction . . . ."); <u>id.</u> ("The ninth circuit's second articulated factor requires . . . ."). Mastronardi's attorneys clearly knew that this failure was inappropriate — hence, elsewhere in Mastronardi's motion brief and reply brief the attorneys properly capitalized "Ninth Circuit."  <u>See generally</u> Doc. No. 40; Doc. No. 48.  The Court suspects that the repeated failure to capitalize "Ninth Circuit" was the result of carelessness, not deliberate disrespect.  Either way, the failure was inappropriate and should not continue in this lawsuit.  <u>See</u> Cal. Rules Prof. Conduct, Rule 8.2, Comment ("Lawyers also are obligated to maintain the respect due to the courts of justice and judicial officers."); Cal. Bus. & Prof. Code § 6068 ("It is the duty of an attorney to . . . maintain the respect due to the courts of justice and judicial officers."); <u>Chicago Manual of Style</u> § 5.6 (17th ed. 2017) ("A proper noun is always capitalized, regardless of how it is used — unless someone is purposely flouting the rules . . . .").

# ORDER

Accordingly, IT IS HEREBY ORDERED that Mastronardi's motion for an anti-arbitration injunction (Doc. No. 40) is DENIED.

IT IS SO ORDERED.

Dated:  January 31, 2020                             _____
                                                     SENIOR DISTRICT JUDGE